LAW OFFICES OF
ERICK L. GUZMAN
Cal. Bar No. 244391
740 4th St.
Santa Rosa, California, 95404
T: 707.594.4474/F: 707.540.6298
E: elg@guzmanlaw.org

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PEYTON EIDSON,<br><br>    Defendant. | CASE NO's. CR-17-0490-SI; 88CR0021-SI<br><br>**DEFENDANT'S OMNIBUS<br>SENTENCING MEMORANDUM** |

**TO:  ALEX G. TSE, ACTING UNITED STATES ATTORNEY; AND
        FRANK RIEBLI, ASSISTANT UNITED STATES ATTORNEY:**

PLEASE TAKE NOTICE that, on April 27, 2018 at 11:00 A.M., or as soon thereafter as client may be heard, defendant, PEYTON EIDSON by and through his attorney, Erick Guzman, will ask this Court grant the following departures, adjustments, and impose a sentence of two years in case number 17CR0490-SI, and a sentence of probation in case number 88CR0021-SI.

# I

# INTRODUCTION

Mr. Eidson now stands before the Court as a wholly different person than the one who committed these crimes decades ago. He is seventy-four years old. He is frail; he is sick; and he is terrified. He has recently lost his wife of over forty years. He is separated—by an ocean and over seven thousand miles—from his daughter and granddaughter with whom he is extremely close.

Regarding the conviction for 1028A, Mr. Eidson is requesting this Court impose a two-year sentence. Regarding the 21 U.S.C. §§ 841 & 841. Mr. Eidson is requesting a sentence of probation.

# II

# THE INSTANT OFFENSES

Over thirty years ago, Mr. Eidson played a significant role in the transportation amount of marihuana. He then left this country, along with his wife and his then-young daughter, and ultimately settled in Australia. He used someone else's identity (with their consent) to achieve this, and lied to many people to conceal this.

He never became an Australian citizen, but lived as the Australian equivalent to a legal permanent resident. That status required him to renew his visa every ten years. However, prior to the filing of his last renewal, the person whose identity Mr. Eidson had co-opted had passed away. As a result, when customs officials processed Mr. Eidson's visa renewal application, they discovered that he was using the name and information of a deceased person, *ergo*, it was fraudulent. This lead to the discovery of Mr. Eidson's true identify and the indictments from 1988. Ultimately, Mr. Eidson was charged in Australia with several offenses including the immigration fraud, and the use of fraudulent documents.

The Australian Court sentenced Mr. Eidson to eighteen months of incarceration. Additionally, the immigration authorities instituted the Australian equivalent of deportation proceedings.  Mr. Eidson fought doggedly to avoid deportation and preserve the ability to live in the Australia after he resolved the American criminal cases. Eventually, after several appeals, he secured at least a chance to return to Australia.   However, this opportunity required Mr. Eidson to drop his challenges to extradition and to voluntarily self deport, which he did.[1]

### III

### THE SENTENCING GUIDELINES ISSUE

Because the institution of the sentencing reform act[2] occurred after the conduct in the 1988 guidelines, the sentencing guidelines do not apply in this case.

### IV

### MR. EIDSON'S TIME IN AUSTRALIA

It goes without saying that Mr. Eidson's entrance into Australia was fraudulent and only made possible, because of the lies he told to the relevant officials.  But that does not alter how he conducted himself whilst in Australia, or the positive impact he made while there.  Amazing would not be overstating the life Mr. Eidson led in Australia.  Undersigned counsel has never seen a defendant who is so beloved by friends and family, and so respected by the members of his community.  The character letters submitted on his behalf

---

[1] It has been claimed repeatedly that Mr. Eidson was deported, but this is not accurate.

[2] While it is true that the Sentencing Reform Act of 1984 was passed in 1984, due to a series of legal challenges, the Act was not instituted until later.

speak for themselves. However, a couple sections deserve highlighting. For example, Warrant Entsch, a member of the Australian Federal Parliament has written a letter describing how he previously advocated to immigration official for Mr. Eidson's ability return to Australia, notwithstanding the spurious circumstances of his original entry into that count. Specifically, Mr. Entsch wrote:

> …I approached the Australian Minister for Immigration . . . asking that the decision on Peyton's imminent departure be reconsidered. There were a number of reasons that I gave for this; one being his outstanding character for all the years he has lived in our country . . . .

Exhibit A at 3-4. Furthermore, Mr. Entsch, has been a member of Australian parliament since 1996, and Mr. Eidson's case is "the first and only time in [his] political career that [he] thought it appropriate to write and support a foreign national . . ." Exhibit A at 4.

Additionally, Dr. John Archer who was the Eidsons' family physician and next door neighbor had the following to say:

> [Mr. Eidson" has always been honest,[3] generous, helpful, and has played a big part in helping this community grow and prosper. . . .The Eidson family started a business  . . . . that grew into a successful hospitality business . . . . [that] employed and trained many young people . . ."

Exhibit A at 6.

After arriving in Australia, Mr. Eidson and his family settled in a more rural region of Queensland, in a town named Julatten. He and his wife started a wellness spa for travelers that offered lodging, dining, *etc.* Slowly but surely, the Eidsons—Peyton, his late

---

[3] It might be argued that such positive assessments of Mr. Eidson are unfounded, because he was living under an assumed name, or '*living a lie.*' However, such an analysis would be obtuse, and ignore the fact that what really maters for this sentencing is not the name under which Mr. Eidson lived, or the validity of his entrance visa, but his actions over the past thirty years. "By their fruits you shall know them." Matthew 7:16.

wife Sonya, and their daughter Maya—became part of the community there. Mr. Eidson became very involved with volunteer work, and played a large part in helping a local playground being built. He often donated (time and/or money) to local charities. Later, his daughter Maya would open a restaurant (Spanish style, *tapas*). Again, this restaurant was a family-ran business where Mr. Eidson's sole grandchild, Azia, would often work.

It is true that that he moved to Australia to avoid dealing with the situation that spawned the 1988 indictment. Nevertheless, Mr. Eidson's flight from the United States came at a price. He had to live with a tremendous amount of stress (especially the first few years), constantly worrying about when he would be exposed. Living with such a secret is a burden that can be psychologically draining. Like the protagonist in *Crime and Punishment*, Mr. Eidson lived with a dangerous secret that weighed heavily upon him. He always carried the burden of his backstory. As a sagacious fictional character put it: "[t]here is more than one sort of prison . . . . I sense that you carry yours wherever you go."

Worse, he had the guilt, not only of the secret, but of the fact that he essentially forced his wife and young innocent daughter to keep the same secret as well.

*Second*, he had to leave his country, which he loved and still loves. *Three*, he had to cut off all communication with his family (his mother, his brother, his cousins, etc.).

In sum, Mr. Eidson requests that his positive, law-abiding behavior in Australia—coupled with his lack of continued criminal history—be considered as mitigating evidence in this Court's sentencing analysis.

V

**MR. EIDSON'S MEDICAL CONDITION**

Mr. Eidson has several serious medical conditions. He suffers from sleep apnea and can only sleep with the aid of a CPAP machine. As a result, every night he is transferred to

the infirmary to sleep with his CPAP machine (due to security concerns, jail officials will not allow Mr. Eidson to keep the CPAP in his cell).

He also suffers from severe Chronic Obstructive Pulmonary Disease ("COPD"). His history with this disease is well-documented. *See* Exhibit B (filed under seal). The difficulties posed by these conditions are numerous and serious. Mr. Eidson cannot walk more than a modest distance without becoming extremely short of breath. long delay before receiving the oxygen). *See* Exhibit C (filed under seal).

While the two conditions above are serious in their own right, they have proven especially troublesome and dangerous to someone in a custodial setting. For example, Mr. Eidson is prone to as 'shortness of breath fits'—referred to as 'exacerbations' in pulmonological parlance—which pose serious danger, and can only be effectively treated by taking additional oxygen. However, Mr. Eidson is not allowed to keep an oxygen tank[4] in his cell, and can only receive oxygen when a nurse is on duty (which is limited) and has the availability to see him (and even then, there is often a lengthy delay).

////

////

////

////

////

////

---

[4] It is the understanding of undersigned counsel that inmates are never allowed to keep oxygen in their cells due to the security risk, not only based on the combustible nature of oxygen, but also because the tubes be used as choking instruments.

# VI

## THE OTHER DEFENDANTS IN 88CR0021 INDICTMENT

| DEFENDANT | SENTENCE | COUNT OF CONVICTION | TRIAL v. PLEA |
|---|---|---|---|
| Ivan Arbogast | Suspended three year prison sentence | 4 | Plea |
| Sandy Harlan | One year of prison, three years of supervised release. | 4 | Trial |
| Rick Kenzel | Suspended three year prison sentence, five years of probation, | 1 & 4 | Trial |
| James Keough | Suspended seven-year prison sentence | 2 | Plea |
| John Larsen | Suspended three-year prison sentence | 1 & 4 | Trial |
| Daniel Hammond | Suspended five-year prison sentence, five years of probation | 4 | Plea |

# VII

## SENTENCING FACTORS

Even though Mr. Edison's 1988 occurred during a prior sentencing regime, there are certain factors that should guide all sentencings. For example, one factor that should be considered is the need to justly punish a defendant for his or her transgressions against the Country. It is respectfully submitted that Mr. Eidson has already been adequately punished for the marihuana offense. While it is true that he has served approximately nine months of custody here in the United States, it must be stressed how unusually harsh incarceration has been for Mr. Eidson. The harshness stems from several factors.

First is Mr. Eidson's age. He arrived at Santa Rita Jail at the age of seventy-three. He is one of the, if not thee, oldest inmates at the jail. To say that he is vulnerable, or unable to protect himself from the other inmates, is an understatement.

Second is Mr. Eidson's medical condition. It has been a nightmare trying to receive

adequate treatment for his conditions. For example, for months, the jail refused to allow Mr. Eidson to have distilled water for his CPAP machine. As a result, his machine (which he brought from Australia) was damaged due to the use of improper water. Further, the use of non-distilled water creates a choking hazard as the minerals found in non-distilled water are sometimes projected into the sleeping patient's mouth. Also, his CPAP machine was calibrated for the elevation in Julatten, Queensland, Australia (1,348 feet), which is significantly different from the elevation in Santa Rita, California (154 feet). Mr. Eidson has filed numerous requests to have his machine re-calibrated to no avail. Also, Mr. Eidson cannot walk very long distances. As a result, he is transported by wheelchair every night to the infirmary so that he can sleep with his CPAP. On one occasion, a correctional officer refused to push Mr. Eidson's wheelchair and ordered him to wheel himself to the infirmary. Mr. Eidson tried to explain that the problem was not his legs, but his lungs. The Officer did not budge and required Mr. Eidson to attempt to wheel himself down a very long hallway to the infirmary. Mr. Eidson suffered an exacerbation and fell out of the wheelchair, and medical staff had to be paged to tend to Mr. Eidson.[5]

Third is the distance form his home. While it is true that Mr. Eidson is a United States citizen, he has not lived in this country for over thirty years. And, during the span of three decades, cultures change, customs change, and America is now a very different country than it was when Mr. Eidson left. It is also a very different country than Australia. In may ways, Mr. Eidson is a foreigner in the jail, just as many defendants would be if they were forced to serve their sentence in Australia. Moreover, Mr. Eidson is thousands of

---

[5] Mr. Eidson promptly filed a grievance over this (and provided a copy of the grievance to undersigned counsel), but no action was ever taken.

miles away from his daughter, granddaughter and his closest friends.

In short, because incarceration has been unusually trying for Mr. Eidson, he submits that he already been sufficiently punished for his marihuana offense.

**Rehabilitation.**  It cannot be disputed that rehabilitation is an important sentencing factor that should be kept in mind while crafting a sentence.  It would be difficult to dispute that Mr. Eidson has been rehabilitated.  In fact, the Judge in Australia that sentenced Mr. Eidson for his passport fraud / immigration documents offenses explicitly stated that Mr. Eidson had been rehabilitated.  Additionally, the numerous character letters, and lack of continued criminal activity, and track record for positive behavior overwhelmingly demonstrate rehabilitation.

**Deterrence.**

(A) (Deter other people form committing crimes).  Under normal circumstances, the theory behind deterrence works as follows: a defendant is convicted of, and sentenced for, a crime that he recently committed.  Word of that conviction and sentence spreads to other people that are either currently committing the same or similar offense, or are contemplating embarking on such a criminal venture.  They fear receiving such a sentence, and are thereby dissuaded from either continuing their crimes (or from beginning to commit such crimes).  However, Mr. Eidson is in such a unique and atypical situation that this form of deterrence is virtually impossible in this case.

(B) (Deter the defendant from committing additional crimes).  While it may be true that the majority of defendants would continue a life of crime if they were able to avoid prosecution on his first case, Mr. Eidson is a horse of a different color.  Mr. Eidson did not continue trafficking marijuana, but rather worked hard, and made an honest living for the next thirty-plus years.  In other words, additional incarceration is not required to ensure Mr.

Eidson "changes his ways."

In conclusion, the above sentencing factors justify this Court imposing a probationary sentence for case number 88CR0021-SI.

## VIII

## SUMMATION

Mr. Eidson respectfully requests for leniency in case number 17CR0490-SI, in large part because of his age, his serious medical conditions, and his impressive, law-abiding behavior in Australia.  Even if the Court imposes the minimal possible sentence, there is serious doubt whether he will survive even that sentence.  Furthermore, many of the justifications for imposing custody break down when the criminal conduct—like the marijuana distribution in this case—occurred so long ago.  Additionally, Mr. Eidson was already received a eighteen months sentenced based on the immigration fraud in Australia, and he will now receive an additional two year sentence in this case.  Furthermore, the controlled substance that was distributed in this case was marijuana albeit in large quantity. Nevertheless, this is a drug that is viewed very differently by society today.  It is now legal in several states, even recreationally.

 Lastly, several of the defendants in this case that were sentenced in 1989 received only suspended sentences (even two that proceeded to trial and lost).

The above reasons justify leniency and a probationary sentence in case number 17CR0490-SI.

////

////

////

# IX
# **CONCLUSION**

For the reasons stated above, Mr. Eidson respectfully requests this Court to impose a sentence of two years in case number 17CR0490-SI, and a sentence of probation in case number 88CR0021-SI.

DATED: April 21, 2018				Respectfully submitted,


						By

						_____
						Erick L. Guzman
						Attorney for Mr. Eidson